| | |
|---|---|
| TYRONE DIXON, | Case No. 1:19-cv-176 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| JOHN M. WILLIAMS, et al., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

On March 5, 2019, Plaintiff Tyrone Dixon, presently incarcerated at the Southeastern Correctional Institution in Lancaster, Ohio, tendered a civil rights complaint together with an application to proceed *in forma pauperis*. Pursuant to local practice, the case has been referred to the undersigned magistrate judge. The case is now before the undersigned on multiple motions filed by both Plaintiff and Defendants. For the reasons that follow, I now recommend that this case be **DISMISSED**.

### I.      Background

On April 16, 2019, the undersigned granted Plaintiff's application to commence his case *in forma pauperis*, while directing Plaintiff to pay the full filing fee of $350.00 through periodic payments calculated from the income credited to Plaintiff's prison account, pursuant to 28 U.S.C. § 1915(b)(2). (Doc. 6). On the same date, the undersigned issued an order noting that the complaint was subject to initial screening under the Prison Litigation Reform Act of 1995, § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b). Unlike most prisoner-litigants who seek to proceed *in forma pauperis*, Plaintiff here does not proceed pro se, but is represented by an attorney who appears frequently

in this Court.[1]  Without discussion of any specific claims, the § 1915(e) screening Order states simply: "At this stage in the proceedings…the undersigned concludes that the complaint is deserving of further development and may proceed at this juncture." (Doc. 8 at 1).  A more detailed summary of Plaintiff's allegations appears below, but Plaintiff generally invokes this Court's federal question jurisdiction under 28 U.S.C. §1331 and 42 U.S.C. § 1983, and invokes supplemental jurisdiction over additional claims alleged under state law.  After concluding that Plaintiff's claims were sufficient to proceed "at this juncture," the Court ordered service on Plaintiff's behalf by the United States Marshal, with the costs of service to be advanced by the United States.

Five motions are currently pending before the Court, including one motion relating to service issues.  Despite the grant of *in forma pauperis* status and the Court's Order directing service on Plaintiff's behalf by the U.S. Marshal, Plaintiff's counsel made a request of the Clerk of Court for the issuance of summons forms. (Doc. 4).  The record reflects that Plaintiff's counsel attempted to serve the Defendants, and filed "executed" copies of summons forms addressed to various Defendants on April 18, 2019, June 22, 2019, and June 24, 2019.  (Docs. 9, 10, 11).  In the meantime, the U.S. Marshal complied with the Court's order and separately served the various Defendants on Plaintiff's behalf. The U.S. Marshal filed executed summons forms on August 1, 2019.  (Doc. 30).

On July 8, 2019, Plaintiff filed a motion seeking the entry of a default judgment

---

[1] Court records reflect that Plaintiff's counsel has prosecuted a dozen civil cases in this Court to date, including cases in which Attorney Smith represented herself.  Eight of counsel's cases remain open, including two cases that, while not formally designated as related cases due to differences among the plaintiffs and legal claims, allege similar civil rights violations by a similar set of defendants.  *See Hoskins v. Peterson*, Case No. 1:18-cv-305-MRB-KLL, *Godfrey v. Williams*, Case No. 1:18-cv-663-SJD-KLL.

against Defendant Benjamin Peterson. (Doc. 17). The next day, Defendant Peterson filed both a response in opposition to the application for entry of default, and a motion to dismiss all claims against him based upon insufficiency of service of process. (Docs. 20, 21). On July 19, 2019, Plaintiff filed a memorandum in opposition to dismissal and in support of the entry of default. (Doc. 26).

In addition to motions related to service on Defendant Peterson, other Defendants have moved to dismiss under Rule 12(b)(6). On June 25, 2019, Defendants Denise Driehaus, Chris Monzel, and Todd Portune, all members of the Hamilton County Board of Commissioners (hereinafter "the Board"), filed a motion to dismiss all claims against them for failure to state a claim, to which Plaintiff filed a response, and Defendants filed a reply. (Docs. 14, 16, 22). On July 15, 2019, Defendant John M. Williams filed a separate motion to dismiss for failure to state a claim. (Doc. 25). Plaintiff has filed no timely response to Defendant Williams' motion. Last, Plaintiff recently filed a motion to amend the complaint.[2] (Doc. 29). Although the time for filing a response has not yet expired, judicial economy favors addressing Plaintiff's motion to amend in this R&R.

## II.    Standard of Review

When considering a motion to dismiss under Rule 12(b)(6), the court is required to construe the complaint in the light most favorable to the Plaintiff and to accept all well-pleaded factual allegations in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) and *Lewis v. ACB Business Services*, 135 F.3d 389, 405 (6th Cir. 1998).

---

[2] On July 26, 2019, Plaintiff filed an amended complaint without first seeking leave of court through an appropriate motion. The July 26, 2019 pleading was stricken as procedurally improper, whereupon Plaintiff refiled the same pleading with an appropriate motion. (Docs. 27, 28, 29).

A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1974). Instead, a complaint must contain either direct or reasonable inferential allegations that support all material elements necessary to sustain a recovery under some viable legal theory. *Lewis v. ACB*, 135 F.3d at 405 (internal citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). A complaint will generally survive under Rule 12(b)(6) standards if it contains sufficient factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Reilly v. Vadlamudi*, 680 F.3d 617, 622–23 (6th Cir. 2012) (quoting *Ashcraft v. Iqbal*, 29 S.Ct. 1937, 1949 (2009)). By contrast, if a defendant has filed a well-supported and meritorious motion to dismiss that clearly illustrates that the plaintiff has failed to state a claim, the motion will be granted.

Here, the Defendants' well-supported motions should be granted. It is worth noting that the legal standard of review for failure to state a claim under Rule 12(b)(6) is technically the same as the standard of review for failure to state a claim under 28 U.S.C. §§ 1915(e) or 1915A. *See Hill v. Lappin,* 630 F.3d 468, 470–471 (6th Cir.2010). However, the frame of reference differs significantly. Screening under 28 U.S.C. §

4

1915(e) is extremely liberal.[3] The perspective of this Court, examining the complaint on a superficial level without benefit of briefing, differs from that of an opposing party who has an incentive to thoroughly explore all possible legal arguments in a subsequent motion to dismiss or motion for judgment on the pleadings. Necessarily constrained by limitations of time and resources in the course of its initial *sua sponte* examination, this Court frequently will permit "further development" of a weak legal claim by requiring a defendant to file an answer or response.

At this time, however, in addition to granting Defendants' motions, the undersigned concludes that additional claims should be dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e) and 1915A. Notwithstanding the undersigned's initial screening order permitting all claims to proceed, 28 U.S.C. § 1915(e)(2) expressly permits dismissal *"at any time* if the court determines that ... the action or appeal ... fails to state a claim on which relief may be granted." *Id.* (emphasis added). Therefore, the statute itself allows dismissal based upon a subsequent redetermination that no claim has been stated, even if the court's initial inclination was to let the claim proceed. In the case presented, Defendants' well-reasoned motions, in combination with Plaintiff's motion for leave to amend the complaint, have caused the undersigned to take a fresh look at the pleading.

III. **Analysis**

A. **The Defendants' Two Motions to Dismiss**

Both the Board and Defendant Williams argue that Plaintiff has failed to state any

---

[3] Most plaintiffs who proceed *in forma pauperis* also proceed pro se, and are entitled to an extra degree of liberality based on their pro se status.

claim against them. The complaint alleges that Plaintiff resided at the Hamilton County Juvenile Detention Center from an unspecified date in January 2018 through May 7, 2018.[4] (Doc. 2 at ¶7). Plaintiff alleges that on two days in May 2018, Defendant Correctional Officer Peterson verbally threatened to break Plaintiff's arm. (*Id.* at ¶9). Either on one of the same days or on some other date, Defendant Peterson also allegedly threatened to place Plaintiff in isolation in a "dirty, bad room" "because Dixon was wrapping around 'my birthday' which is May 7th." (*Id.* at ¶11).[5] Plaintiff alleges that, two months earlier in March 2018, Peterson was involved in an incident with someone named "Hoskins," and that Peterson "broke Hoskins['] arm in three places." (*Id.* at ¶13).

Plaintiff asserts five causes of action against the entire group of Defendants: (1) Freedom of Speech; (2) Failure to Train, Instruct and Supervise; (3) Ohio Constitution and Laws of Ohio Assault; (4) Common Law Negligence; and (5) Ohio Constitution and Laws of Ohio Intentional Infliction of Emotional Distress.[6] The first two causes of action purport to allege violations of Plaintiff's constitutional rights under 42 U.S.C. § 1983, whereas the remaining three causes of action rely on state law.

The only reference to either the Board or Judge Williams contained in the entire complaint states in relevant part:

> Judge Williams is responsible for the Juvenile Detention Center and appoints Superintendent of the Detention Center…. [T]he Hamilton County Board of Commissioners and Judge Williams are responsible for regulating and supervising Hamilton County Ohio Juvenile Court Detention Center.

---

[4] Plaintiff does not state his age at the time he was incarcerated in the referenced facility; the undersigned assumes that Plaintiff attained the age of majority prior to filing this lawsuit.

[5] Plaintiff does not state whether this separate verbal threat occurred on the same date or on a different date as the alleged threats to break his arm.

[6] The complaint mistakenly lists the fifth cause of action as a second "Fourth Cause of Action."

(*Id.* at ¶3).

The undersigned takes judicial notice that both the Board and Judge Williams recently filed motions to dismiss or for judgment as a matter of law in another case in which a different inmate housed at the Hamilton County Juvenile Detention Center, represented by the same counsel, also filed suit against the Board and Judge Williams, among others. *See Godfrey v. Hamilton County Juvenile Court, John M. Williams, Administrator*, Case No. 1:18-cv-663-SJD-KLL. Although the underlying facts of *Godfrey* differ from those presented here, the essence of the Plaintiff's allegations against the Board and Judge Williams do not. On July 18, 2019, Magistrate Judge Litkovitz filed a Report and Recommendation ("R&R") that recommends granting the Defendants' motions to dismiss claims against them in the *Godfrey* case. The undersigned finds Judge Litkovitz's reasoning to be compelling, and adopts it in its entirety.

### 1. Plaintiff's § 1983 Claims Against the Board and Judge Williams

In this case as in *Godfrey*, the Board argues that the authority of County Commissioners is limited, and that the Defendant Board members have no operational control of the county juvenile detention center where Plaintiff alleges that any injuries took place. "The Hamilton County Board of Commissioners has no role or authority to determine who is hired as a deputy by the superintendent of the Hamilton County Juvenile Detention Center, how those employees are trained, how they are discipline[d], or how the facility is operated." (Doc. 14 at 3). Plaintiff's primary argument in response is that it is not the Court's task "to undertake an exhaustive analysis of the legal validity of the claims in the suit….," and that all that is required to give the defendants fair notice of what

the claims are and the grounds upon which the claims rest.  (Doc. 16 at 4).  Plaintiff further alleges that the Board's website shows "they have some responsibility" for the Detention Center." (*Id.* at 5).  Plaintiff asserts that whether the Board breached a duty and proximately caused harm to Plaintiff will require discovery.  (*Id.*)

For the reasons stated by Magistrate Judge Litkovitz in her recent analysis of the same arguments, the Defendant Board is entitled to dismissal of all § 1983 claims alleged by Plaintiff:

> Plaintiff's complaint fails to state a claim for relief against the Board under § 1983. An Ohio county can be sued under § 1983 through its board of commissioners. *Smith v. Grady*, 960 F. Supp. 2d 735, 740 (S.D. Ohio 2013) (citing Ohio Rev. Code § 305.12). Plaintiff's complaint against the Board is in reality an official capacity suit against Hamilton County, the entity of which the Board is an agent. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978). *See also Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Municipalities and counties are not vicariously liable for the actions of their employees under § 1983. *Id.* "It is firmly established that a municipality, or as in this case a county, cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents." *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000) (citing *Monell*, 436 U.S. at 694). To state a claim for relief under § 1983 against a county, plaintiff must allege that his "injuries were the result of an unconstitutional policy or custom" of the county. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *see also Monell*, 436 U.S. at 694; *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). *Cf. Polk County v. Dodson*, 454 U.S. 312 (1981) (municipal policy must be "moving force" behind constitutional deprivation). A plaintiff may show the existence of an unlawful policy or custom by demonstrating "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). Counties and other governmental entities cannot be held

responsible for a constitutional deprivation unless there is a direct causal link between a policy or custom and the alleged deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993).

*Godfrey*, Doc. 43, R&R at 6-7, 2019 WL 3239259 at *3 (S.D. Ohio July 18, 2019).

In the above-captioned case, Plaintiff seeks to impose liability on the Board for injuries that allegedly were caused by a single correctional officer. For the reasons explained below, the undersigned concludes that none of Plaintiff's factual allegations state any claim as a matter of law. Even if the instant complaint otherwise stated a claim against any identified Defendant, however, the undersigned still concurs with and adopts the analysis of Judge Litkovitz:

Plaintiff contends that the Detention Center is part of the Juvenile Court and, by extension, the Board is responsible for Detention Center employees…. Plaintiff's barebones allegation that the Board is responsible for regulating and supervising the Juvenile Court and the Detention Center and therefore [is] liable in this case is an attempt to impose vicarious liability on the Board. This is an insufficient basis to state a claim for relief under § 1983… In addition, plaintiff has alleged no facts indicating that Detention Center employees violated his constitutional rights pursuant to a policy or custom of the County. Plaintiff's allegations are insufficient to support the imposition of liability on the Board for the alleged acts and omissions of the Detention Center employees under a failure to train or any other theory of liability. *Burgess*, 735 F.3d at 478. Thus, plaintiff has failed to state an actionable claim for relief against the Board based on the theory of municipal liability. *See Monell*, 436 U.S. at 693-94. Plaintiff's 1983 claim against the Board should be dismissed.

*Id.*, Doc. 43 at 7-8, 2019 WL 3239259 at *4 (additional internal citations and footnote omitted).

Defendant Williams is entitled to dismissal of Plaintiff's § 1983 claims for similar reasons.[7] Notably, Plaintiff has filed no timely response in opposition to the motion filed by Judge Williams, which motion is persuasive. Finding no need to reinvent the wheel, the undersigned adopts Judge Litkovitz's well-reasoned analysis as to Plaintiff Dixon's claims against Judge Williams in his official capacity:

> Plaintiff's amended complaint against defendant Williams in his official capacity should be dismissed. Any form of relief sought against a State in federal court is barred under the Eleventh Amendment unless the State has waived its sovereign immunity. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 58 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Hamilton's Bogarts, Inc. v. Mich.*, 501 F.3d 644, 654 n.8 (6th Cir. 2007). The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Ford Motor Company v. Dept. of Treasury*, 323 U.S. 459, 464 (1945). A suit against state officials in their official capacities would, in reality, be a way of pleading the action against the entity of which the state officials are agents. *Monell*, 436 U.S. at 690. Thus, actions against state officials in their official capacities are included in this bar. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232 (1974). *See also Calvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac County*, 574 F.3d 334, 344 (6th Cir. 2009)) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver.") (citation and ellipsis omitted).

> A claim against a Juvenile Court judge in his official capacity is treated as a suit against the Juvenile Court, which is an arm of the state. *Smith v. Grady*, 960 F. Supp. 2d 735, 752 (S.D. Ohio 2013). This Court has previously held that because the Hamilton County Juvenile Court is an arm of the state, a juvenile court judge who is sued in his or her official capacity is entitled to

---

[7] The doctrine of absolute judicial immunity protects judicial officers from suit based upon actions undertaken in their judicial capacity, but likely would not apply to this case since Plaintiff has identified Judge Williams' role as administrative in nature. *See generally, Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Pearson v. Ray*, 386 U.S. 547 (1967); *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997).

sovereign immunity under the Eleventh Amendment. *Id. See also Hunter v. Hamilton County*, No. 1:15-cv-540, 2016 WL 11463840, at *6 (S.D. Ohio May 5, 2016) (Report and Recommendation), *adopted*, 2016 WL 4836810 (S.D. Ohio Sept. 15, 2016) (citing *Hafer v. Melo*, 502 U.S. 21, 25-26 (1991)) (citing *Will*, 491 U.S. at 66-71; *Quern v. Jordan*, 440 U.S. 332, 340-41 (1979)). Therefore, defendant Williams, in his official capacity, is immune from suit under the Eleventh Amendment. Plaintiff's § 1983 claim against Williams in his official capacity should be dismissed.

*Godfrey*, 2019 WL 3239259 at **4-5 (internal footnote omitted). The undersigned further agrees with Defendant Williams that the Hamilton County Juvenile Court is not an entity capable of being sued. *See also id.* at 5, n.3.

The undersigned finds equally compelling *Godfrey*'s analysis of identical § 1983 claims filed against Judge Williams in his individual capacity:

Plaintiff's sole allegation against Williams in support of the § 1983 claim is that he is "responsible for regulating and supervising [the] Hamilton County Ohio Juvenile Court." …

*     *     *     *     *

An individual-capacity suit under § 1983 must be premised on more than *respondeat superior* liability. *See Iqbal*, 556 U.S. 676; *Monell*, 436 U.S. at 691. "[Section] 1983 liability of supervisory personnel must be based on more than the right to control employees." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). The "failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982); *see also McQueen v. Beecher Community Schools*, 433 F.3d 460, 470 (6th Cir. 2006). Liability under § 1983 is premised on active unconstitutional behavior and not a mere failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (citations omitted).

Plaintiff alleges no facts indicating that Williams "either encouraged the specific incident of misconduct or in some other way directly participated in it," or that he "at least implicitly authorized, approved, or knowingly

acquiesced in the unconstitutional conduct of the offending officers." *See Hays*, 668 F.2d at 874. Plaintiff's allegations that Williams has supervisory responsibility for the Juvenile Court and did not train, instruct, or supervise employees of the Detention Center are vague and conclusory. Under Ohio law, the Detention Center Superintendent, and not the Juvenile Court judge, is responsible for managing and supervising Detention Center employees. *See* Ohio Rev. Code § 2151.70. Plaintiff essentially alleges vicarious liability against defendant Williams, which cannot support a § 1983 claim against Williams. The § 1983 claim brought against Williams in his individual capacity should be dismissed.

*Id.* at *5.

In addition to the reasons stated by Judge Litkovitz, to the extent that Plaintiff asserts a violation of "Freedom of Speech" under "Article 1, §11 of the Ohio Constitution," (Doc. 2 at ¶ 17), Plaintiff's claim fails because there is no private cause of action for relief for violations of the Ohio Constitution. *See, e.g., Provens v. Stark Cty. Bd. of Mental Retardation & Developmental Disabilities*, 64 Ohio St. 3d 252, 261, 594 N.E.2d 959, 966 (Ohio 1992).

### 2. Plaintiff's State Law Claims Against the Board and Judge Williams

Plaintiff's remaining three state law claims against the Board and Judge Williams for "assault," "common law negligence," and "intentional infliction of emotional distress" also should be dismissed. In *Godfrey*, the plaintiff asserted identical state law claims against the Board and Judge Williams. In opposition to dismissal of Godfrey's claims, the plaintiff presented the same arguments that Plaintiff Dixon presents in this case in opposition to the Board's motion to dismiss. Like Judge Litkovitz, I find Plaintiff's arguments to be unpersuasive. Therefore, the undersigned again concurs with and fully adopts the exhaustive analysis set forth in *Godfrey*:

12

*a.*        *The state law claims against the Board should be dismissed.*

Section 2744.02 of the Ohio Revised Code establishes a three-tiered analysis for determining whether a political subdivision is immune from liability. *Jordan v. Murphy*, 145 F. App'x 513, 518 (6th Cir. 2005). First, the Act sets forth the general rule that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." *Id.* (quoting Ohio Rev. Code § 2744.02(A)(1)). Second, Ohio Rev. Code § 2744.02(B) sets out five exceptions to the general grant of immunity. *Id.* If the Court finds that an exception to the general grant of immunity applies under the second tier analysis, the third tier analysis applies. Under the third tier, the political subdivision can have immunity reinstated by establishing that a defense set forth in § 2744.03 applies. *Id.*

Plaintiff argues the Board does not have immunity from liability under § 2744.02(B)(2) because it had an affirmative duty to act as shown by its website. (Doc. 29 at 6). Plaintiff contends that the "Hamilton County Juvenile Court and Youth Center" is listed under "services" on the "Board of Hamilton County website," and the website states that the Board created the "appointed office of County Administrator to manage Board policies and prepare the County budget." (*Id.*). Based on these statements, plaintiff alleges that the Board has "a proprietary responsibility to the Juvenile Court Youth Center" and "liability for injury for the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." (*Id.*). Plaintiff alleges that discovery must be conducted to determine if the proximate cause of his injury was "the Board's budgetary, hiring, or 'Hamilton County Board of Commissioners Policy Manual,' hiring or negligent acts of the county administrator." (*Id.*). Plaintiff argues the Board is not immune from liability under the second tier analysis of Ohio Rev. Code § 2744.03(A)(6)(b) because the officers' conduct was "wanton and reckless" as is alleged in the complaint. (*Id.* at 7-8). Plaintiff further argues that the Board is not immune from liability under Ohio Rev. Code § 2744.02(B)(5) if it had a "special duty to act." (*Id.* at 8-9). Plaintiff alleges that discovery must be completed to ascertain if "the Board knew of multiple excessive force cases and even if they knew Officer Peterson is predisposed to excessive force." (*Id.* at 9).

The Board argues in reply that it is immune from liability for assault and battery and intentional infliction of emotional distress under the three-tier analysis of § 2744.02. (Doc. 32). The Board further alleges that the common

law special duty doctrine has no application here. (*Id.* at 3, citing *Sawicki v. Village of Ottawa Hills*, 525 N.E.2d 468 (Ohio 1988)).

The allegations of the complaint do not permit a finding that the Board of Commissioners can be held liable under state law for the negligence or intentional torts of an employee of the Detention Center. A political subdivision is generally not liable in damages. *Greene Cty. Agric. Soc. v. Liming*, 733 N.E.2d 1141, 1146 (Ohio 2000). *See also Woods v. Miamisburg City Schools*, 254 F. Supp. 2d 868, 880 (S.D. Ohio 2003) ("Ohio courts have consistently held that political subdivisions, particularly those acting in a governmental capacity, are exempt from intentional tort claims."). Plaintiff has not alleged facts to show that an exception to liability applies here. Plaintiff argues that the functions at issue are proprietary functions. However, he seeks to hold the Board liable based on its alleged authority to regulate and supervise the Detention Center. "The ... operation of ... places of juvenile detention ... or any other detention facility, as defined in section 2921.01 of the Revised Code," is a governmental function under Ohio law. Ohio Rev. Code § 2744.01(C)(1)(h). *See also Smeal ex rel. Smeal v. Alexander*, No. 5:06-cv-2109, 2006 WL 3469637, at *9 (N.D. Ohio Nov. 30, 2006) ("the provision of police services[,] judicial, quasi-judicial and prosecutorial functions[,] and the operation of jails" are defined as governmental functions under Ohio Rev. Code §§ 2744.01(C)(2)(a), (f) and (h)). Plaintiff has not shown there is an exception to the Board's immunity for damages in connection with a governmental function under § 2744.02(B) that potentially applies to his intentional tort or negligence claims.

In addition, the "special duty" or "public duty" rule has no applicability here. The rule, which is a defense to liability of employees of a political subdivision, holds that "a municipality owes a duty only to the general public when performing functions imposed on it by law, and therefore it is not liable for a breach of that duty resulting in harm to an individual, absent a special duty owed to the injured person." *Est. of Graves v. Circleville*, 922 N.E.2d 201, 204 (Ohio 2010). The rule is not applicable in civil actions, such as this case, which are "brought against employees of political subdivisions for wanton or reckless conduct" after the effective date of Ohio Rev. Code Ch. 2744. *Id.* at 202, syll.

Plaintiff's allegations do not permit a finding that the Board can be held liable under state law for any damages that he claims proximately resulted from the negligence or intentional tort of a Detention Center employee. The state law claims against the Board should be dismissed.

b.        *The state law claims against Williams should be dismissed.*

Defendant Williams moves to dismiss plaintiff's state law claims… on the grounds Williams did not personally engage in any tortious conduct, and neither he nor the Juvenile Court can be held vicariously liable for the torts of certain Detention Center employees…. Williams contends that plaintiff's claims premised on the Ohio Constitution must fail because plaintiff has not identified a specific constitutional provision that he allegedly violated, and there is no private right of action under the Ohio Constitution. (*Id.* at 4-5). Williams alleges he did not employ or control employees of the Detention Center, but instead those employees are under the direct management and supervision of the facility's Superintendent, defendant Bowman, pursuant to Ohio Rev. Code § 2151.70. (*Id.* at 5). Williams also asserts that plaintiff's negligence claims must be dismissed because plaintiff has not asserted that Williams owed a duty to him that he breached, and plaintiff has not alleged facts to show that Ohio Rev. Code § 2307.50 applies here. (*Id.* at 5-6). In addition, Williams alleges that all state law claims brought against him must be dismissed because he has statutory immunity from liability under Ohio Rev. Code §§ 2744.02, 2744.03, and 9.86.

*Godfrey*, at **6-7 (internal footnotes 4-7 omitted).

In *Godfrey*, the plaintiff timely filed a memorandum in opposition, but Judge Litkovitz still found the Defendant's motion to be meritorious based upon the plaintiff's failure to allege facts on which personal liability could be based, and because Judge Williams was entitled to statutory immunity under state law.  By contrast in the case presented, Defendant Williams' motion to dismiss is unopposed. Judge Williams makes the same well-founded arguments, and the undersigned again adopts Judge Litkovitz's thorough analysis.

Plaintiff has not stated a claim for relief under state law against Williams in either his official or his individual capacity because defendant Williams is immune from such relief. Defendant Williams cannot be sued in federal court in his official capacity under Ohio law. As stated *supra*, a suit against defendant Williams in his official capacity is in essence a suit against the Juvenile Court, which is an arm of the State of Ohio. As such, plaintiff's state law claims are barred by the Eleventh Amendment. *See McCormick v. Miami Univ.*, 693 F.3d 654, 664 (6th Cir. 2012) (state law claims against state university and its officials barred by Eleventh Amendment). *See also Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 520-21 (6th Cir.

2007) ("The Supreme Court has squarely held that pendent state law claims against state officials in their official capacity are barred by the Eleventh Amendment.") (citing *Pennhurst State Sch.*, 465 U.S. at 117-21).

In addition, the amended complaint does not allege any facts to support a finding that Williams can be held personally liable for plaintiff's injuries. Plaintiff mentions defendant Williams, as well as the Juvenile Court, once in the amended complaint, alleging that "Judge Williams [is] responsible for regulating and supervising Hamilton County Ohio Juvenile Court." … Plaintiff has not cited any authority to show that Williams can be held individually liable for the tortious acts or omissions of employees of the Detention Center simply by virtue of his role as administrative judge over the Juvenile Court. As a Juvenile Court judge, defendant Williams is under no duty to train, instruct, or supervise the employees of the Detention Center. That responsibility is held by defendant Bowman, the Superintendent of the Detention Center. *See* Ohio Rev. Code § 2151.70.

Nor has plaintiff cited any authority indicating that Williams is not exempt from liability under Ohio Rev. Code § 2743.02(F). As the Sixth Circuit has explained:

> When faced with a claim of immunity to a supplemental state claim, a federal court must look to the appropriate state law to ascertain the nature of the immunity. *Cullinan v. Abramson*, 128 F.3d 301, 312 (6th Cir. 1997). And Ohio has not consented to state law actions against the State of Ohio and state officials outside of its own courts. *See Jones v. Hamilton Cty. Sheriff*, 838 F.3d 782, 786 (6th Cir. 2016). Ohio Rev. Code § 9.86 provides that no "employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the ... employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Revised Code § 2743.02(F), in turn, establishes that lawsuits alleging damages against state employees "shall first be filed against the state in the court of claims that has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86." Thus, "Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86." *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989); *see also McCormick v. Miami Univ.*, 693 F.3d 654, 665 (6th Cir. 2012).

*In re Ohio Execution Protocol Litig.*, 709 F. App'x 779, 784 (6th Cir. 2017). Accordingly, under Ohio Rev. Code §§ 9.86 and 2743.02(F), this Court lacks jurisdiction to hear state law claims against Ohio officials until the Ohio Court of Claims has first determined that the officials are not entitled to immunity. *See id.* As there is no allegation that the Ohio Court of Claims has made such a determination with regard to defendant Williams in this case, plaintiff's state law claims against defendant Williams must be dismissed for lack of subject matter jurisdiction. *See Adams v. Coughlan*, No. 2:14-cv-41, 2015 WL 300465, at *4 (S.D. Ohio Jan. 22, 2015) ("[T]he Sixth Circuit has repeatedly held that federal courts lack subject matter jurisdiction to hear state law claims against state employees where those claims were not first brought before the Ohio Court of Claims."). Thus, plaintiff has failed to state a claim for relief against Williams for a violation of Ohio law.

Plaintiff has not alleged facts to show that Williams can be held liable under Ohio law in his official or individual capacity for the alleged tortious acts or omissions of the Detention Center employees. Plaintiff's state law claims against defendant Williams should be dismissed.

*Godfrey*, 2019 WL 3239259 at **8-9.

## B.    *Sua Sponte* Review and Dismissal of Remaining Claims

Notwithstanding the undersigned's initial conclusion that Plaintiff Dixon's claims appeared "deserving of further development," it has become apparent through the Court's more extensive analysis of Defendants' motions to dismiss that <u>none</u> of Plaintiff's allegations against <u>any</u> of the identified Defendants are sufficient to state a claim. Because § 1915(e) and § 1915A require this Court to dismiss a case "at any time" if it becomes apparent that a prisoner's allegations fail to state a claim as a matter of law, the undersigned now recommends dismissal of the remainder of claims against all remaining Defendants.

### 1.    Failure to State Any § 1983 Claim Against Remaining Defendants

In enacting the original *in forma pauperis* statute, Congress recognized that a

"litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). Although a complaint filed by a pro se plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers, Plaintiff here is represented by counsel and his pleading is therefore entitled to no such extra consideration. *Contrast Estelle v. Gamble*, 429 U.S. 97, 106

(1976) (internal citation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly,* 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555 (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). While a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

Plaintiff has named nine individuals as Defendants. As stated above, the motions to dismiss filed by Defendants Portune, Driehaus, Monzel, and Williams should be granted. In addition, all claims against the remaining five Defendants, including Superintendent Dwayne Bowman, Correctional Officers Coley Turner and Benjamin Peterson, Supervisor Dave Leunsman, and Supervisor William Allen, in both their official and individual capacities, should be dismissed.

Plaintiff offers few allegations against Defendants Bowman, Turner, Leunsman and Allen other than identifying their job titles and that they "work for" the Detention Center. (*See* Doc. 2 at ¶3, alleging that "Bowman is the Superintendent, Supervisors

Turner, Leunsman, Allen, Correctional Officer Peterson, work for the Juvenile Court Detention Center….").   Because Plaintiff's allegations against these four Defendants parallel his allegations against Defendant Williams, the same reasons in favor of dismissal of all claims against Williams apply equally to support dismissal of all claims against Bowman, Turner, Leunsman and Allen.

In addition, all claims against all five remaining Defendants, including Defendant Peterson, should be dismissed because the sparse factual allegations included in the complaint fail to state any claim as a matter of law.   The "Factual Allegations" section of the complaint states:

> 9.  In May 2018 Correctional Officer Peterson threatened to break Dixon's arm twice; two days in a row.
>
> 10.  Correctional Officer Peterson told Dixon, "I'll break your arm too, just like I did Hoskins."
>
> 11.  Correctional Officer Peterson threatened to put Dixon in room 10, which is dirty, bad room, for isolation just because Dixon was rapping around "my birthday" which is May 7th.
>
> 12.  Dixon heard Correctional Officer bragging about breaking Hoskins arm to other residents at 20/20 "like it is the highlight of his life."
>
> 13.  On March 3, 2018, Peterson broke Hoskins arm in three places.  Turner was present.  Children's Hospital called Bowman that day because the injuries were so extensive.  Leunsman and Allen knew about the incident, but all responsible parties allowed Peterson to continue working and threatening the children until Peterson was finally left on disability.
>
> 14.  Turner was demoted for failing to promptly report the March 2018 incident.

Complaint, Doc. 2 at ¶¶ 9-14 (punctuation and grammar original).

In his motion to dismiss, Defendant Williams describes the above-captioned case

as "a companion" case to *Azuriah Hoskins v. Hamilton Cty. Juvenile Court, et al.,*
*Administrator*, Case No. 1:18-cv-305-MRB-KLL. In *Hoskins*, another inmate filed suit
against eight of the same nine Defendants identified here, including Judge Williams, the
two correctional officers and two supervisors, and three members of the Hamilton County
Board of Commissioners.[8] The complaint in *Hoskins* is centered around an alleged
altercation that occurred between Hoskins and Correctional Officers Peterson and Turner
on March 3, 2018, and includes no reference to Tyrone Dixon, the Plaintiff herein.

Plaintiff Dixon has no standing to pursue any remedy on behalf of inmate Hoskins
for events that allegedly occurred two months prior to the alleged verbal threats against
Plaintiff Dixon. The complaint strongly implies knowledge by Dixon of Hoskins' alleged
injuries, but provides no detail concerning the source of Dixon's knowledge. The
complaint does not allege, for instance, that Dixon witnessed the altercation involving
inmate Hoskins on March 3, 2018. Even if he had, an allegation that an inmate witnessed
an altercation between another inmate and correctional officers would not state any viable
§1983 claim for the witness.

The inclusion of allegations relating to Hoskins appears to be intended to bolster
support for Plaintiff's own claim against Peterson, based on the alleged prior knowledge
of some Defendants of the *Hoskins* incident, (*see* ¶13, stating "Turner was present.
Children's Hospital called Bowman…. Leunsman and Allen knew about the incident….").

---

[8] The same counsel represents the plaintiff in *Hoskins*. Superintendent Bowman was not named as a
Defendant in *Hoskins*, but is the ninth Defendant named in this lawsuit. Judge Litkovitz granted the Board's
motion to dismiss claims against the individual Board members in *Hoskins* in their official capacities, but
declined to dismiss Plaintiff's state law claims because the *Hoskins* Board Defendants failed to address
"whether the Board is entitled to immunity" under state law. (Doc. 18 at 10, adopted at Doc. 25). At the
time this R&R is being filed, multiple dispositive motions remain pending in *Hoskin*s.

However, the four Defendants' alleged knowledge of an incident involving another inmate two months earlier is insufficient to suggest a plausible §1983 claim against Defendants Bowman, Turner, Leunsman or Allen. In fact, Plaintiff does not allege that Bowman, Turner, Leunsman or Allen were present, were aware of, or had any personal involvement in the May 2018 incidents involving Plaintiff. Plaintiff's allegations against Defendant Peterson also fail to state any § 1983 claim under *Iqbal*.

### a. Plaintiff's First Amendment Claim

In support of his "Freedom of Speech" claim under § 1983, Plaintiff includes the following two allegations:

> 16. Defendants' conduct, as described above, was shocking to the conscience or outrageous, and violated Plaintiff[']s rights guaranteed to him under the First Amendment to the Constitution of the United States and enforced through 42 U.S.C. Section 1983 and Article 1 §11 of the Ohio Constitution.
>
> 17. As a result of Defendants' conduct, Plaintiff has been damaged.

(*Id.* at ¶¶ 16-17).

Plaintiff fails to specify the manner in which he has been "damaged," and the undersigned finds a lack of sufficient factual detail concerning such "damage" to be one of several reasons for the Court's conclusion that Plaintiff has failed to satisfy *Iqbal/Twombly* standards or to state any claim. As Defendant Williams points out, Plaintiff does not allege that Defendant Peterson ever physically harmed him after the two alleged verbal threats to break Dixon's arm. Likewise, Plaintiff does not allege that Peterson followed through on the threat to place him in isolation. The only allegation connected to Plaintiff's exercise of speech ("rapping") is that on some unspecified date (which may

or may not have been one of the days that Defendant Peterson threatened to break Plaintiff's arm), Defendant Peterson verbally threatened to put Plaintiff in a "dirty, bad" isolation cell "just because" he was rapping.

To the extent that Plaintiff seeks to hold any of the remaining Defendants liable for Peterson's verbal threats, it is well-settled that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo v. Tennessee Dep't of Corr.*, 499 Fed. Appx. 453, 455 (6th Cir. 2012) (per curiam) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)); *see also Chilcott v. Erie Cnty. Domestic Relations*, 283 Fed. Appx. 8, 11 (3rd Cir. 2008) (and Sixth, Fifth and Tenth Circuit cases cited therein). *Cf. Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545-46 (6th Cir. 2004). This Court has dismissed many similar cases on initial screening for failure to state any claim. *See, e.g., Pippin v. Hamilton County Sheriff*, 2014 WL 12832229 (S.D. Ohio Oct. 1, 2014); *Sweeting v. Schweitzer*, 2018 WL 271482 (S.D. Ohio Jan. 3, 2018).

Most § 1983 claims filed by prisoners alleging a Free Speech Clause violation are based on allegations that a particular defendant restricted an inmate's rights in a manner that impeded the inmate's access to the courts. *See, e.g., Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010) (stating that, for an allegation regarding legal mail to state a claim under § 1983, "[t]here must be some allegation that the prison official's conduct amounted to denial of access to the courts or some form of censorship of speech"); *Morelock v. Parsons*, 2018 WL 5850171, at *2 (E.D. Tenn. 2018). Assuming that a stand-alone claim may be based solely on "some form of censorship of speech," as implied in *Stanley*,

Plaintiff's allegations fall short of that mark because he fails to allege any actual injury. *Accord, Williams v. Thomas*, 2019 WL 1905166 (W.D. Tenn. April 29, 2019) (allegations that plaintiff's outgoing mail was unreasonably read and censored failed to state actual injury, and allegation that plaintiff suffered an injury in being denied access to news outlets because he could not obtain information on current events was too conclusory to state First Amendment claim).

The necessity of an actual injury resulting from the alleged verbal threat rests on the core principle of standing, and is the only way in which a mere verbal threat can (sometimes) give rise to an actionable constitutional claim.[9]  Although Plaintiff alleges he was threatened with confinement in an isolation cell if Plaintiff continued "rapping around 'my birthday'" on one occasion, the complaint does not allege that Plaintiff ceased speaking, singing, or rapping - either on that single occasion, or at any other time.  Nor has Plaintiff provided any allegations concerning how Defendants Bowman, Turner, Leunsman, or Allen violated his rights under the Free Speech Clause. "Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983."  *Hursey v. Klinesmith*, 2011 WL 2580403 (W.D. Mich. June 28, 2011) (dismissing under *Iqbal* standards allegation that defendant violated inmate's free speech rights when defendant refused to pick up his personal mail, grievances, and

---

[9] Plaintiff's complaint does not use the word "retaliation."  However, even if reasonably construed as a First Amendment retaliation claim based on Peterson's verbal threat of isolation in response to speech that Peterson apparently deemed to be offensive or annoying, Plaintiff's allegations would still fail to state any claim.  Many non-actionable verbal threats directed by correctional officers toward inmates arise during verbal interactions between inmates and officers.   Elevating a verbal threat made in response to some verbal iteration by an inmate to the level of a constitutional tort would eviscerate the well-settled rule that verbal harassment or threats do not state a claim under §1983.

correspondences). Accordingly, Plaintiff's allegations fail to state any actionable § 1983 claim against any Defendant for a violation of the Free Speech Clause.

### b. Plaintiff's "Failure to Train, Instruct and Supervise" Claim

For the same reasons stated with respect to Defendant Williams and above, Plaintiff's allegations fail to state any plausible § 1983 claim against Defendants Bowman, Turner, Leunsman, or Allen based upon their alleged failure to train, instruct, or supervise Defendant Peterson.[10] Again, Plaintiff lacks standing to assert such a claim with respect to any injuries suffered two months earlier by inmate Hoskins. And Plaintiff has failed to allege that Plaintiff himself suffered any actual injury that would confer standing. While deplorable and unprofessional, mere verbal threats simply do not amount to a constitutional claim.

Plaintiff also fails to specify the personal involvement of any particular Defendant in any constitutional injury. Instead, Plaintiff alleges only:

> 19. Defendants' conduct, as described above, including permitting the use of threats after knowing Peterson's propensity to carry out such a threat and Turner's failure to immediately report the March incident constitute a breach of duty to train, instruct, and supervise, was shocking to the conscience or outrageous, and violated Plaintiff[']s rights guaranteed to him under the Fourth and Fourteenth Amendments to the Constitution of the United States and enforced through 42 U.S.C. Section 1983.
>
> 20. As a result of Defendants' conduct, Plaintiff has been damaged.

(Doc. 2 at ¶¶ 19-20). Plaintiff does not articulate what rights under the Fourth and Fourteenth Amendments that he believes were abridged, nor does he indicate whether

---

[10] The undersigned assumes, despite Plaintiff's undifferentiated reference to all "Defendants," that Plaintiff is not alleging that Defendant Peterson failed to train, instruct, or supervise himself.

he was a pretrial detainee or whether he was incarcerated after a conviction. Even if Plaintiff's reference to "shocking the conscience" is construed as a reference to his substantive due process rights, his allegations are simply too lacking in factual detail and too conclusory to support any plausible claim under *Iqbal*.

### 2. Failure to State Any State Law Claim Against Any Defendant

Consistent with the above analysis concerning Williams, *see infra* at 16-17, this Court lacks jurisdiction to hear state law claims against Ohio officials until the Ohio Court of Claims has first determined the officials are not entitled to immunity. In the absence of the existence of any federal claim under § 1983, the Court also could decline to exercise supplemental jurisdiction over any state law claims. Even if jurisdiction exists, however, the undersigned would recommend dismissal of the state law claims as legally insufficient to state any claim against any Defendant.

As noted, there is no private cause of action for relief for violations of the Ohio Constitution. Plaintiff alleges that "Defendants' conduct…constitute[s] assault and was malicious, wanton, or reckless, shocking to the conscience or outrageous, and violated Plaintiff's rights guaranteed him under the Ohio Constitution and laws of Ohio." (Doc. 2 at ¶22). However, Plaintiff includes no factual allegations to support a claim of a physical "assault" by any Defendant, nor does Plaintiff explain any basis for imposing liability for "assault" on Defendant Peterson under state law for verbal threats. For similar reasons, Plaintiff's allegations fail to state a claim for negligence or for the intentional infliction of emotional distress under any known Ohio statutory or common law.

### C. Plaintiff's Motion to Amend Should be Denied as Futile

Plaintiff seeks to amend his complaint to add the following allegation: "Plaintiff's injuries are largely a result of policy and custom of inadequate training and routinely being understaffed by HCJC and HCBC." The referenced acronyms are undefined, but are presumed to refer to the "Hamilton County Justice Center" and the "Hamilton County Board of Commissioners."[11] A comparison of the tendered amended complaint with the original complaint confirms that both pleadings contain identical allegations, save for the addition of the referenced sentence. The addition of this entirely conclusory allegation does not satisfy *Iqbal* or otherwise save Plaintiff's deficient pleading; therefore, the motion to amend should be denied.

### D. Plaintiff's Motion for Default Judgment and Defendant Peterson's Motion to Dismiss for Deficient Service

Despite the grant of *in forma pauperis* status and this Court's Order directing service at the government's expense by the U.S. Marshal, Plaintiff's counsel attempted to issue additional service. Thus, Plaintiff's counsel filed a "Proof of Service" form, stating that on April 18, 2019, counsel left a copy of the summons form at Defendant Peterson's "place of business, Teresa, Metro HR, 602 Main Street, Cincinnati, Ohio." (Doc. 9).

#### 1. Plaintiff's Rule 55 Motion for Default Judgment and Construed Application for Entry of Default

On the basis of her return of service on Defendant Peterson on April 18, 2019, Plaintiff filed a "Motion for Entry on Default Judgment Against Defendant Benjamin

---

[11] The Hamilton County Justice Center is not named as a Defendant in this case, although individuals associated with the Hamilton County Juvenile Detention Center are parties. The three individual members of the Hamilton County Board of Commissioners are identified as Defendants in their official capacities.

Peterson." (Doc. 17). A Rule 55(b) motion for default *judgment* cannot be filed before a party first applies for entry of a default under Rule 55(a). Multiple courts have held that under Rule 55, Fed. R. Civ. P., before moving for judgment by default, "the proponent must first request the clerk's entry of default pursuant to Rule 55(a)." *American Auto. Ass'n v. Dickerson*, 995 F. Supp.2d 753, 756 (E. D. Mich. 2014); *see also Devlin v. Kalm*, 493 Fed. Appx. 678, 686-86, 2012 WL 3241656 at **6-7 (collecting cases). Therefore, if Plaintiff intended to seek a "default judgment," the motion should be denied as premature.

However, the body of Plaintiff's motion cites to Rule 55(a), the provision providing for an application for entry of default. Thus, it appears that Plaintiff's motion is more appropriately construed as an application filed under Rule 55(a), rather than a premature Rule 55(b) motion. In fact, Defendant Peterson, through counsel has made a limited appearance contesting the construed application for entry of default. (Doc. 20).

Defendant Peterson argues that there is no indication that anyone, authorized or otherwise, signed as accepting service on behalf of Mr. Peterson, and that neither Ohio law nor Rule 4(e), Fed. R. Civ. P., anticipate service of a defendant at his or her workplace. The undersigned agrees. The service form on which Plaintiff relies reflects service of the summons form only on "Teresa" (no last name identified) at a city address designating an office building that contains multiple businesses. The reference to "Metro HR" appears to refer to the Southwest Ohio Regional Transit Authority ("SORTA") office, commonly known as the Cincinnati Metro office. However, in addition to failing to contain the signature of any identifiable person authorized to accept service on Defendant's behalf, the summons form does not identify the office address at which the form was left;

28

the Metro office is at Suite 1100. Because there is no provision to serve a defendant at his workplace, and because the form on which Plaintiff relies gives no other indication of proper service, Plaintiff's motion for default judgment, construed as an application for entry of default, should be denied.

### 2. Defendant Peterson's Motion to Dismiss for Improper Service

On July 9, 2019, Defendant Peterson moved to dismiss all claims against him based upon the failure of Plaintiff to obtain service. (Doc. 21). Pursuant to Rule 4(m), Fed. R. Civ. P., a plaintiff has only 90 days in which he must obtain service on all defendants, although that time may be extended for good cause. Under the rule, after the expiration of the 90-day period without adequate service, a court must either dismiss without prejudice or order that service be made within a specified time.

Because Plaintiff was granted *in forma pauperis* status, the responsibility to serve each Defendant "as directed by plaintiff," (Doc. 8), rests on the U.S. Marshal. The record reflects that Plaintiff directed the U.S. Marshal to serve Peterson through service on the county prosecutor. The U.S. Marshal filed a return of service on August 1, 2019, reflecting service on multiple county officials, including Peterson, by certified mail directed to Assistant Hamilton County Prosecutor Pamela Sears. (Doc. 30).

Plaintiff insists that under Ohio Civil Rule 4.2(L), Defendant Peterson was properly served because counsel appeared "for all other county defendants" after service on the county prosecutor's office.[12] However, Plaintiff's reading of state law concerning service

---

[12] Although the return of service by the U.S. Marshal against Peterson reflects that an answer was due not later than June 26, 2019, Defendant Peterson has not appeared other than to challenge service.

is only partially correct. The language of the referenced rule allows service upon a <u>county</u> or its agencies through service on the "officer responsible for the administration of the office, agency, district, department, institution or unit or by serving the prosecuting attorney of the county." In *Scott v. Kreiger*, 328 F. Supp. 495 (N.D. Ohio 1981), the court held that service accepted by the county prosecutor on behalf of an ex-sheriff was effective as to that defendant's official capacity because an official capacity suit is against the county itself. However, the same method of service was not effective for claims filed against the former employee in his personal or individual capacity. *See id.*, 328 F. Supp. at 497 (dismissing claims against ex-sheriff in official capacity for failure to state a claim based upon a lack of any specific allegations against the ex-sheriff other than claims based on *respondeat superior*).

In the case presented, Plaintiff is suing Defendant Peterson in both his official and individual capacities. Under *Scott,* service on the prosecutor was not effective service on Peterson in his individual capacity. The effectiveness of the attempted service on the county prosecutor for claims filed against Peterson in his official capacity also remains unclear in this record, due to the lack of any legible signature. (*See* Doc. 30). Still, the lack of service would not entitle Defendant Peterson to immediate dismissal. In other cases in which plaintiffs who proceed *in forma pauperis* have failed to provide sufficient information to the U.S. Marshal to achieve effective service, the undersigned has granted additional time under Rule 4(m) to provide for proper service. Here, however, the recommendation to dismiss all claims against all Defendants, including Defendant Peterson, makes any further consideration of service issues unnecessary. Therefore, the

undersigned recommends denying Peterson's motion to dismiss for insufficiency of service as moot.

## IV.  Conclusion and Recommendations

For the reasons stated herein, **IT IS RECOMMENDED THAT**:

1. The joint motion of Defendants Driehaus, Monzel, and Portune ("the Board") to dismiss all claims against them for failure to state a claim (Doc. 14) should be GRANTED;

2. Plaintiff's Rule 55 motion for default judgment against Defendant Peterson, as well as the construed application for entry of default against the same Defendant (Doc. 17) should be DENIED;

3. Defendant Williams' motion to dismiss all claims against him for failure to state a claim (Doc. 25) should be GRANTED;

4. All remaining claims against all remaining Defendants should be DISMISSED *sua sponte* under §§ 1915(e) and 1915A;

5. Plaintiff's motion to amend the complaint (Doc. 29) should be DENIED; and

6. Defendant Peterson's motion to dismiss for insufficient service (Doc. 21) should be DENIED as moot;

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TYRONE DIXON,                                                    Case No. 1:19-cv-176

        Plaintiff,                                            Barrett, J.
                                                                Bowman, M.J.

    v.


JOHN M. WILLIAMS, et al.,

        Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).